IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | | |
|---|---|---|
| Bernie Randolph Huggins, | ) | Civil Action No.: 8:10-cv-02680-HMH-JDA |
| | ) | |
| Plaintiff, | ) | **REPORT AND RECOMMENDATION** |
| | ) | **OF MAGISTRATE JUDGE** |
| vs. | ) | |
| | ) | |
| Michael J. Astrue, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the Court for a Report and Recommendation pursuant to Local Civil Rule 73.02(B)(2)(a), D.S.C., and Title 28, United States Code, Section 636(b)(1)(B).[1] Plaintiff brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of a final decision of the Commissioner of Social Security ("the Commissioner"), denying Plaintiff's claims for disability insurance benefits ("DIB") and supplemental security income ("SSI").[2] For the reasons set forth below, it is recommended that the decision of the Commissioner be reversed and remanded for administrative action consistent with this recommendation, pursuant to sentence four of 42 U.S.C. § 405(g).

---

[1]A Report and Recommendation is being filed in this case, in which one or both parties declined to consent to disposition by a magistrate judge.

[2] Section 1383(c)(3) provides, "The final determination of the Commissioner of Social Security after a hearing under paragraph (1) shall be subject to judicial review as provided in section 405(g) of this title to the same extent as the Commissioner's final determinations under section 405 of this title." 42 U.S.C. § 1383(c)(3).

## PROCEDURAL HISTORY

On February 13, 2008, Plaintiff protectively filed Title II and Title XVI applications for DIB and SSI, respectively, alleging an onset of disability date of December 20, 2007. [*See* R. 33–36, 69.] Plaintiff alleged disability due to "[l]eg giving out, cannot read or write, concentration, memory, chest wall pain[,] a heart testing, high blood pressure, cholesterol, diabetes, learning disability." [R. 41.] The claims were denied initially on June 9, 2008 [R. 33–34, 45–50] and were denied on reconsideration by the Social Security Administration ("the Administration") on August 12, 2008 [R. 35–36, 39–44]. On October 2, 2008, Plaintiff requested a hearing before an administrative law judge ("ALJ") [R. 37–38], and on June 4, 2009, ALJ Arthur L. Conover conducted a de novo hearing on Plaintiff's claims [R. 166–99].

The ALJ issued a decision on July 30, 2009, finding Plaintiff was not disabled. [R. 15–24.] Specifically, the ALJ found Plaintiff had severe impairments of osteoarthritis of the thigh and left leg; organic mental disorder; and somatoform disorder. [R. 17, Finding 3.] The ALJ also found Plaintiff had non-severe impairments of neck, arm, chest, and back pain; diabetes; and obesity. [*Id.*] The ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed in 20 C.F.R., Part 404, Subpart P, Appendix 1; the ALJ specifically considered Listing 12.05. [R. 18, Finding 4.] Further, the ALJ found Plaintiff had the residual functional capacity to perform work with restrictions, including lifting and /or carrying no more than 50 pounds occasionally and 25 pounds frequently and standing and/or walking about six hours in an eight-hour workday. [R. 18, Finding 5.] The ALJ also found that, due to his illiteracy,

2

Plaintiff was limited to unskilled, routine work. [*Id.*] Finally, the ALJ determined Plaintiff was capable of performing past relevant work as a farm laborer [R. 23, Finding 6] and, therefore, had not been under a disability from December 20, 2007 through the date of the ALJ's decision [R. 23, Finding 7].

Plaintiff requested Appeals Council review of the ALJ's decision [R. 9], but the Appeals Council denied the request, finding no reason to review the ALJ's decision [R. 5–8]. Plaintiff filed this action for judicial review on October 15, 2010. [Doc. 1.]

## THE PARTIES' POSITIONS

First, Plaintiff argues the ALJ erred in his determination of Plaintiff's residual functional capacity. [Doc. 7 at 2; Doc. 13 at 1.] Specifically, Plaintiff contends the ALJ failed to properly consider Plaintiff's need for frequent breaks and his documented diabetes, pain disorder, osteoarthritis, and obesity. [Doc. 7 at 2; Doc. 13 at 1.] Second, Plaintiff contends the ALJ failed to properly consider Plaintiff's illiteracy and a doctor's finding of mild mental retardation, which, when combined with Plaintiff's age, education, and work history, precludes Plaintiff from performing any jobs in the local or national economy on a full-time basis. [Doc. 7 at 3; *see* Doc. 13 at 1.] Third, Plaintiff argues the ALJ failed to consider the Administration's conclusion that Plaintiff could not perform his past relevant work as a farm laborer, and the ALJ erred by failing to obtain testimony from a vocational expert by posing to the expert a hypothetical containing the Administration's previous findings. [Doc. 7 at 3; Doc. 13 at 1–2.] Finally, Plaintiff contends the ALJ erred by finding Plaintiff's testimony not credible because Plaintiff's statements were consistent with the degree of disability Plaintiff alleged. [Doc. 7 at 4–5; Doc. 13 at 2–3.]

3

The Commissioner contends substantial evidence supports the ALJ's finding that Plaintiff could perform past relevant work [Doc. 10 at 7], and the ALJ reasonably evaluated the credibility of Plaintiff's subjective statements because his allegedly disabling limitations in functioning were inconsistent with his activities [*id.* at 8–9]. The Commissioner also argues the ALJ properly considered Plaintiff's illiteracy by finding he should be limited to unskilled work. [*Id.* at 11.] Finally, the Commissioner contends there was no prior final agency decision for the ALJ to consider regarding Plaintiff's ability to perform his past relevant work as a farm laborer. [*Id.* at 12–13.]

## STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla—i.e., the evidence must do more than merely create a suspicion of the existence of a fact and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966) (citing *Woolridge v. Celebrezze*, 214 F. Supp. 686, 687 (S.D.W. Va. 1963)) ("Substantial evidence, it has been held, is evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'").

Where conflicting evidence "allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the [Commissioner's] designate, the ALJ)," not on the reviewing court. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *see also Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991) (stating that where the Commissioner's decision is supported by substantial evidence, the court will affirm, even if the reviewer would have reached a contrary result as finder of fact and even if the reviewer finds that the evidence preponderates against the Commissioner's decision). Thus, it is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the Commissioner so long as the decision is supported by substantial evidence. *Laws*, 368 F.2d at 642; *Snyder v. Ribicoff*, 307 F.2d 518, 520 (4th Cir. 1962).

The reviewing court will reverse the Commissioner's decision on plenary review, however, if the decision applies incorrect law or fails to provide the court with sufficient reasoning to determine that the Commissioner properly applied the law. *Myers v. Califano,* 611 F.2d 980, 982 (4th Cir. 1980); *see also Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994). Where the Commissioner's decision "is in clear disregard of the overwhelming weight of the evidence, Congress has empowered the courts to modify or reverse the [Commissioner's] decision 'with or without remanding the cause for a rehearing.'" *Vitek v. Finch*, 438 F.2d 1157, 1158 (4th Cir. 1971) (quoting 42 U.S.C. § 405(g)). Remand is unnecessary where "the record does not contain substantial evidence to support a decision denying coverage under the correct legal standard and

when reopening the record for more evidence would serve no purpose." *Breeden v. Weinberger*, 493 F.2d 1002, 1012 (4th Cir. 1974).

The court may remand a case to the Commissioner for a rehearing under sentence four or sentence six of 42 U.S.C. § 405(g). *Sargent v. Sullivan*, 941 F.2d 1207 (4th Cir. 1991) (unpublished table decision). To remand under sentence four, the reviewing court must find either that the Commissioner's decision is not supported by substantial evidence or that the Commissioner incorrectly applied the law relevant to the disability claim. *See, e.g.*, *Jackson v. Chater*, 99 F.3d 1086, 1090–91 (11th Cir. 1996) (holding remand was appropriate where the ALJ failed to develop a full and fair record of the claimant's residual functional capacity); *Brehem v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980) (holding remand was appropriate where record was insufficient to affirm but was also insufficient for court to find the claimant disabled). Where the court cannot discern the basis for the Commissioner's decision, a remand under sentence four may be appropriate to allow the Commissioner to explain the basis for the decision. *See Smith v. Heckler*, 782 F.2d 1176, 1181–82 (4th Cir. 1986) (remanding case where decision of ALJ contained "a gap in its reasoning" because ALJ did not say he was discounting testimony or why); *Gordon v. Schweiker*, 725 F.2d 231, 235 (4th Cir. 1984) (remanding case where neither the ALJ nor the Appeals Council indicated the weight given to relevant evidence). On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence. *See Smith*, 782 F.2d at 1182 ("The [Commissioner] and the claimant may produce further evidence on remand."). After a remand under sentence four, the court

enters a final and immediately appealable judgment and then loses jurisdiction. *Sargent*, 941 F.2d 1207 (citing *Melkonyan v. Sullivan*, 501 U.S. 89, 102 (1991)).

In contrast, sentence six provides:

> The court may . . . at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . . .

42 U.S.C. § 405(g). A reviewing court may remand a case to the Commissioner on the basis of new evidence only if four prerequisites are met: (1) the evidence is relevant to the determination of disability at the time the application was first filed; (2) the evidence is material to the extent that the Commissioner's decision might reasonably have been different had the new evidence been before him; (3) there is good cause for the claimant's failure to submit the evidence when the claim was before the Commissioner; and (4) the claimant made at least a general showing of the nature of the new evidence to the reviewing court. *Borders v. Heckler*, 777 F.2d 954, 955 (4th Cir. 1985) (citing 42 U.S.C. § 405(g); *Mitchell v. Schweiker*, 699 F.2d 185, 188 (4th Cir. 1983); *Sims v. Harris*, 631 F.2d 26, 28 (4th Cir. 1980); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979)), *superseded by amendment to statute*, 42 U.S.C. § 405(g), *as recognized in Wilkins v. Sec'y, Dep't of Health & Human Servs.*, 925 F.2d 769, 774 (4th Cir. 1991).[3] With remand under sentence

---

[3]Though the court in *Wilkins* indicated in a parenthetical that the four-part test set forth in *Borders* had been superseded by an amendment to 42 U.S.C. § 405(g), courts in the Fourth Circuit have continued to cite the requirements outlined in *Borders* when evaluating a claim for remand based on new evidence. *See, e.g.*, *Ashton v. Astrue*, No. 6:10-cv-152, 2010 WL 5478646, at *8 (D.S.C. Nov. 23, 2010); *Washington v. Comm'r of Soc. Sec.*, No. 2:08-cv-93, 2009 WL 86737, at *5 (E.D. Va. Jan. 13, 2009); *Brock v. Sec'y of Health & Human Servs.*, 807 F. Supp. 1248, 1250 n.3 (S.D.W. Va. 1992). Further, the Supreme Court of the United States has not suggested *Borders*' construction of § 405(g) is incorrect. *See Sullivan v. Finkelstein*, 496 U.S. 617, 626 n.6 (1990). Accordingly, the Court will apply the more stringent *Borders* inquiry.

six, the parties must return to the court after remand to file modified findings of fact. *Melkonyan*, 501 U.S. at 98. The reviewing court retains jurisdiction pending remand and does not enter a final judgment until after the completion of remand proceedings. *See Allen v. Chater*, 67 F.3d 293 (4th Cir. 1995) (unpublished table decision) (holding that an order remanding a claim for Social Security benefits pursuant to sentence six of 42 U.S.C. § 405(g) is not a final order).

## APPLICABLE LAW

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a disability. 42 U.S.C. § 423(a). "Disability" is defined as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 consecutive months.

*Id.* § 423(d)(1)(A).

## I.    The Five Step Evaluation

To facilitate uniform and efficient processing of disability claims, federal regulations have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g.*, *Heckler v. Campbell*, 461 U.S. 458, 461 n.2 (1983) (noting a "need for efficiency" in considering disability claims). The ALJ must consider whether (1) the claimant is engaged in substantial gainful activity; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment included in the Administration's Official Listings of Impairments found at 20 C.F.R. Pt. 404, Subpt. P, App. 1; (4) the impairment prevents

8

the claimant from performing past relevant work; and (5) the impairment prevents the claimant from having substantial gainful employment.  20 C.F.R. §§ 404.1520, 416.920. Through the fourth step, the burden of production and proof is on the claimant.  *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983).  The claimant must prove disability on or before the last day of her insured status to receive disability benefits.  *Everett v. Sec'y of Health, Educ. & Welfare*, 412 F.2d 842, 843 (4th Cir. 1969).  If the inquiry reaches step five, the burden shifts to the Commissioner to produce evidence that other jobs exist in the national economy that the claimant can perform, considering the claimant's age, education, and work experience.  *Grant*, 699 F.2d at 191.  If at any step of the evaluation the ALJ can find an individual is disabled or not disabled, further inquiry is unnecessary.  20 C.F.R. §§ 404.1520(a), 416.920(a)(4); *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981).

### A.    *Substantial Gainful Activity*

"Substantial gainful activity" must be both substantial—involves doing significant physical or mental activities, 20 C.F.R. §§ 404.1572(a), 416.972(a)—and gainful—done for pay or profit, whether or not a profit is realized, *id.* §§ 404.1572(b), 416.972(b).  If an individual has earnings from employment or self-employment above a specific level set out in the regulations, he is generally presumed to be able to engage in substantial gainful activity.  *Id.* §§ 404.1574–.1575, 416.974–.975.

### B.    *Severe Impairment*

An impairment is "severe" if it significantly limits an individual's ability to perform basic work activities.  *See id.* §§ 404.1521, 416.921.  When determining whether a

claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments. 42 U.S.C. §§ 423(d)(2)(B), 1382c(a)(3)(G). The ALJ must evaluate a disability claimant as a whole person and not in the abstract, having several hypothetical and isolated illnesses. *Walker v. Bowen*, 889 F.2d 47, 49–50 (4th Cir. 1989) (stating that, when evaluating the effect of a number of impairments on a disability claimant, "the [Commissioner] must consider the combined effect of a claimant's impairments and not fragmentize them"). Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled. *Id.* at 50 ("As a corollary to this rule, the ALJ must adequately explain his or her evaluation of the combined effects of the impairments."). If the ALJ finds a combination of impairments to be severe, "the combined impact of the impairments shall be considered throughout the disability determination process." 42 U.S.C. §§ 423(d)(2)(B), 1382c(a)(3)(G).

### C.    *Meets or Equals an Impairment Listed in the Listings of Impairments*

If a claimant's impairment or combination of impairments meets or medically equals the criteria of a listing found at 20 C.F.R. Pt. 404, Subpt. P, App.1 and meets the duration requirement found at 20 C.F.R. §§ 404.1509 or 416.909, the ALJ will find the claimant disabled without considering the claimant's age, education, and work experience. 20 C.F.R. §§ 404.1520(d), 416.920(a)(4)(iii), (d).

D.    *Past Relevant Work*

The assessment of a claimant's ability to perform past relevant work "reflect[s] the statute's focus on the functional capacity retained by the claimant." *Pass v. Chater*, 65 F.3d 1200, 1204 (4th Cir. 1995). At this step of the evaluation, the ALJ compares the claimant's residual functional capacity[4] with the physical and mental demands of the kind of work he has done in the past to determine whether the claimant has the residual functional capacity to do his past work. 20 C.F.R. §§ 404.1560(b), 416.960(b).

E.    *Other Work*

As previously stated, once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy. *See* 20 C.F.R. §§ 404.1520(f)–(g), 416.920(f)–(g); *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992). To meet this burden, the Commissioner may sometimes rely exclusively on the Medical-Vocational Guidelines (the "grids"). Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant nonexertional factors.[5] 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(e); *Gory v. Schweiker*, 712 F.2d 929, 930–31 (4th Cir. 1983) (stating that exclusive reliance on the grids is appropriate in cases involving

---

[4]Residual functional capacity is "the most [a claimant] can do despite [his] limitations." 20 C.F.R. §§ 404.1545(e), 416.945(a)(1).

[5]An exertional limitation is one that affects the claimant's ability to meet the strength requirements of jobs. 20 C.F.R. §§ 404.1569a; 416.969a. A nonexertional limitation is one that affects the ability to meet the demands of the job other than the strength demands. *Id.* Examples of nonexertional limitations include but are not limited to difficulty functioning because of being nervous, anxious, or depressed; difficulty maintaining attention or concentrating; difficulty understanding or remembering detailed instructions; difficulty seeing or hearing. *Id.*

exertional limitations).  When a claimant suffers from both exertional and nonexertional limitations, the grids may serve only as guidelines.  *Gory*, 712 F.2d at 931.  In such a case, the Commissioner must use a vocational expert to establish the claimant's ability to perform other work.  20 C.F.R. §§ 404.1569a, 416.969a; *see Walker*, 889 F.2d at 49–50 ("Because we have found that the grids cannot be relied upon to show conclusively that claimant is not disabled, when the case is remanded it will be incumbent upon the [Commissioner] to prove by expert vocational testimony that despite the combination of exertional and nonexertional impairments, the claimant retains the ability to perform specific jobs which exist in the national economy.").  The purpose of using a vocational expert is "to assist the ALJ in determining whether there is work available in the national economy which this particular claimant can perform."  *Walker*, 889 F.2d at 50.  For the vocational expert's testimony to be relevant, "it must be based upon a consideration of all other evidence in the record, . . . and it must be in response to proper hypothetical questions which fairly set out all of claimant's impairments."  *Id.* (citations omitted).

## II.    Developing the Record

The ALJ has a duty to fully and fairly develop the record.  *See Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986).  The ALJ is required to inquire fully into each relevant issue.  *Snyder*, 307 F.2d at 520.  The performance of this duty is particularly important when a claimant appears without counsel.  *Marsh v. Harris*, 632 F.2d 296, 299 (4th Cir. 1980).  In such circumstances, "the ALJ should scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts, . . . being especially diligent in

ensuring that favorable as well as unfavorable facts and circumstances are elicited." *Id.* (internal quotations and citations omitted).

### III.    Treating Physicians

The opinion of a claimant's treating physician must "be given great weight and may be disregarded only if there is persuasive contradictory evidence" in the record. *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987) (citing *Foster v. Heckler*, 780 F.2d 1125, 1130 (4th Cir. 1986) (holding that a treating physician's testimony is entitled to great weight because it reflects an expert judgment based on a continuing observation of the patient's condition over a prolonged period of time); *Mitchell v. Schweiker*, 699 F.2d 185, 187 (4th Cir. 1983)).  If a treating physician's opinion on the nature and severity of a claimant's impairments is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record, the ALJ must give it controlling weight.  20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2); *see Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001).  The ALJ may discount a treating physician's opinion if it is unsupported or inconsistent with other evidence. *Craig*, 76 F.3d at 590.  Similarly, where a treating physician has merely made conclusory statements, the ALJ may afford the opinion such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments.  *See id.* (holding there was sufficient evidence for the ALJ to reject the treating physician's conclusory opinion where the record contained contradictory evidence).

When a treating physician's opinion does not warrant controlling weight, the ALJ must nevertheless assign a weight to the medical opinion based on the 1) length of the treatment relationship and the frequency of examination; 2) nature and extent of the treatment relationship; 3) supportability of the opinion; 4) consistency of the opinion with the record a whole; 5) specialization of the physician; and 6) other factors which tend to support or contradict the opinion. 20 C.F.R. §§ 404.1527(d), 416.927(d). In any instance, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion. *See Mitchell*, 699 F.2d at 187 (stating that treating physician's opinion must be accorded great weight because "it reflects an expert judgment based on a continuing observation of the patient's condition for a prolonged period of time"); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). An ALJ determination coming down on the side of a non-examining, non-treating physician's opinion can stand only if the medical testimony of examining and treating physicians goes both ways. *Smith v. Schweiker*, 795 F.2d 343, 346 (4th Cir.1986).

The ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled. 20 C.F.R. §§ 404.1527(e), 416.927(e). However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability. *Id.*

## IV.    Medical Tests and Examinations

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment

14

to determine whether the claimant is disabled.  20 C.F.R. §§ 404.1517, 416.917; *see also*
*Conley v. Bowen*, 781 F.2d 143, 146 (8th Cir. 1986).  The regulations are clear: a
consultative examination is not required when there is sufficient medical evidence to make
a determination on a claimant's disability.  20 C.F.R. §§ 404.1517, 416.917.  Under the
regulations, however, the ALJ may determine that a consultative examination or other
medical tests are necessary.  *Id.*

## V.     Pain

Congress has determined that a claimant will not be considered disabled unless he
furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing
the existence of a medical impairment that could reasonably be expected to produce the
pain or symptoms alleged.  42 U.S.C. § 423(d)(5)(A).  In evaluating claims of disabling
pain, the ALJ must proceed in a two-part analysis.  *Morgan v. Barnhart,* 142 F. App'x 716,
723 (4th Cir. 2005) (unpublished opinion).  First, "the ALJ must determine whether the
claimant has produced medical evidence of a 'medically determinable impairment which
could reasonably be expected to produce . . . the actual pain, in the amount and degree,
alleged by the claimant.'"  *Id.* (quoting *Craig*, 76 F.3d at 594).  Second, "if, and only if, the
ALJ finds that the claimant has produced such evidence, the ALJ must then determine, as
a matter of fact, whether the claimant's underlying impairment *actually* causes her alleged
pain."  *Id.* (emphasis in original) (citing *Craig*, 76 F.3d at 595).

Under the Fourth Circuit's "pain rule," it is well established that "subjective
complaints of pain and physical discomfort can give rise to a finding of total disability, even

when those complaints [a]re not supported fully by objective observable signs." *Coffman*, 829 F.2d at 518. The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence. 20 C.F.R. §§ 404.1528, 416.928. Indeed, the Fourth Circuit has rejected a rule which would require the claimant to demonstrate objective evidence of the pain itself, *Jenkins v. Sullivan*, 906 F.2d 107, 108 (4th Cir. 1990), and ordered the Commissioner to promulgate and distribute to all administrative law judges within the circuit a policy stating Fourth Circuit law on the subject of pain as a disabling condition, *Hyatt v. Sullivan*, 899 F.2d 329, 336–37 (4th Cir. 1990). The Commissioner thereafter issued the following "Policy Interpretation Ruling":

> This Ruling supersedes, only in states within the Fourth Circuit (North Carolina, South Carolina, Maryland, Virginia and West Virginia), Social Security Ruling (SSR) 88-13, Titles II and XVI: Evaluation of Pain and Other Symptoms:
>
> ...
>
> **FOURTH CIRCUIT STANDARD:** Once an underlying physical or [m]ental impairment that could reasonably be expected to cause pain is shown by medically acceptable objective evidence, such as clinical or laboratory diagnostic techniques, the adjudicator must evaluate the disabling effects of a disability claimant's pain, even though its intensity or severity is shown only by subjective evidence. If an underlying impairment capable of causing pain is shown, subjective evidence of the pain, its intensity or degree can, by itself, support a finding of disability. Objective medical evidence of pain, its intensity or degree (i.e., manifestations of the functional effects of pain such as deteriorating nerve or muscle tissue, muscle spasm, or sensory or motor disruption), if available, should be obtained and considered. Because pain is not readily susceptible of objective proof, however, the absence of objective medical evidence of the intensity, severity, degree or functional effect of pain is not determinative.

SSR 90-1p, 55 Fed. Reg. 31,898-02, at 31,899 (Aug. 6, 1990). SSR 90-1p has since been superseded by SSR 96-7p, which is consistent with SSR 90-1p. *See* SSR 96-7p, 61 Fed. Reg. 34,483-01 (July 2, 1996). SSR 96-7p provides, "If an individual's statements about pain or other symptoms are not substantiated by the objective medical evidence, the adjudicator must consider all of the evidence in the case record, including any statements by the individual and other persons concerning the individual's symptoms." *Id.* at 34,485; *see also* 20 C.F.R. §§ 404.1529(c)(1)–(c)(2), 416.929(c)(1)–(c)(2) (outlining evaluation of pain).

## VI.    Credibility

The ALJ must make a credibility determination based upon all the evidence in the record. Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. *Hammond v. Heckler*, 765 F.2d 424, 426 (4th Cir. 1985). Although credibility determinations are generally left to the ALJ's discretion, such determinations should not be sustained if they are based on improper criteria. *Breeden*, 493 F.2d at 1010 ("We recognize that the administrative law judge has the unique advantage of having heard the testimony firsthand, and ordinarily we may not disturb credibility findings that are based on a witness's demeanor. But administrative findings based on oral testimony are not sacrosanct, and if it appears that credibility determinations are based on improper or irrational criteria they cannot be sustained.").

17

## APPLICATION AND ANALYSIS

**Failure to Explain Discounting of Vocational Report**

Plaintiff argues the ALJ failed to consider the Administration's conclusion that Plaintiff could not perform his past relevant work as a farm laborer.  The Court agrees the ALJ erred by failing to indicate and explain the weight he gave to the disability examiner's vocational report, which concluded Plaintiff did not retain the capacity to perform his past relevant work.

As stated above, a reviewing court will reverse and remand the Commissioner's decision if the decision fails to provide the court with sufficient reasoning to determine whether the Commissioner properly applied the law or to determine the basis of the Commissioner's decision.  *Myers*, 611 F.2d at 982; *see Smith*, 782 F.2d at 1181–82. Further, a reviewing court cannot determine whether the Commissioner's decision is supported by substantial evidence unless the Commissioner explicitly indicates and sufficiently explains the weight given to all of the relevant evidence.  *Gordon*, 725 F.2d at 235 (quoting *Arnold v. Sec'y*, 567 F.2d 258, 259 (4th Cir. 1977)).  Moreover, "principles of administrative law require the ALJ to rationally articulate the grounds for her decision and confine our review to the reasons supplied by the ALJ.  That is why the ALJ (not the Commissioner's lawyers) must 'build an accurate and logical bridge from the evidence to her conclusion.'"  *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002) (citations omitted).

Here, the ALJ determined Plaintiff was capable of performing his past relevant work of farm laborer because, at the hearing, the vocational expert testified this past relevant work was unskilled medium work and the ALJ found Plaintiff retained the residual

18

functional capacity to perform unskilled medium work. [R. 23.] The record before the ALJ contained a vocational report—an Administration form prepared by the disability examiner—that indicated Plaintiff "[d]oes not retain capacity for past relevant work." [R. 81.] However, although he mentioned this notation at the hearing [R. 196–97], the ALJ's decision contains no discussion of the vocational report.[6]

The Court finds the vocational report was relevant evidence because it was directed to one of the findings the ALJ was required to make—whether Plaintiff could perform his past relevant work—and contradicted the evidence relied on and the conclusion reached by the ALJ. Because the vocational report was relevant evidence, the ALJ was required to indicate and explain the weight he gave the vocational report. Here, the ALJ failed to indicate and explain the weight given to the vocational report; accordingly, the Court cannot determine whether the ALJ's decision is supported by substantial evidence, and thus, the case should be remanded for the ALJ to properly explain why he disregarded the vocational report.

**Plaintiff's Remaining Arguments**

Because the Court finds the ALJ's failure to explain the weight given to the vocational report is a sufficient basis to remand the case to the Commissioner, the Court

---

[6] The Commissioner argues there was no prior final agency decision finding Plaintiff incapable of performing past relevant work for the ALJ to consider; the Court finds this argument is without merit. In support of his argument, the Commissioner cites *Lively v. Secretary of Health & Human Services*, which states that "courts have readily applied *res judicata* to prevent the [Commissioner] from reaching an inconsistent result in a second proceeding based on evidence that has already been weighed in a claimant's favor in an earlier proceeding." 820 F.2d 1391, 1392 (4th Cir. 1987) (citing *Gavin v. Heckler*, 811 F.2d 1195, 1200 (8th Cir.1987)). In *Lively*, the plaintiff filed two applications for disability benefits; on the first application, he was found to be limited to light work, and on the subsequent application, he was found to be capable of performing work at any exertional level. *Id.* Here, the record reveals only one proceeding; Plaintiff merely argues the ALJ failed to consider evidence supplied by the Administration through its disability examiner at the early stages of this proceeding. Thus, the facts of this case are inapposite to the facts of *Lively*, and the Court concludes the Commissioner's argument is without merit.

declines to specifically address Plaintiff's additional allegations of error by the ALJ. However, upon remand, the ALJ should take into consideration Plaintiff's remaining allegations of error.[7]

---

[7] In addition to Plaintiff's allegations of error, upon review of the record, the Court is not convinced the ALJ's finding at Step 3 of the sequential analysis is supported by substantial evidence. At Step 3, the ALJ determined Plaintiff's impairments did not meet or medically equal Listing 12.05C. [R. 18.] The relevant listing contains the following criteria:

> Mental retardation: Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
> . . .
>
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function. . . .

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05. In this case, the ALJ found no evidence of deficits in Plaintiff's adaptive functioning initially manifested before age 22. [R. 18.]

A diagnosis of mental retardation requires a combination of "significantly subaverage intellectual functioning (an IQ of approximately 70 or below)" and "significant limitations in adaptive functioning" in at least two skill areas, which include communication, self-care, home living, social/interpersonal skills, use of community resources, self-direction, functional academic skills, work, leisure, health, and safety. American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* 41 (4th ed., Text Revision 2000). Moreover, a diagnosis of mental retardation requires a finding that the patient's intellectual limitations began in childhood. *Id.* at 54. Additionally, the Fourth Circuit has recognized that the regulations "expressly define mental retardation as denoting 'a lifelong condition.'" *Branham v. Heckler*, 775 F.2d 1271, 1274 (4th Cir. 1985) (quoting 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00B4). A claimant does not have to present evidence of an IQ test prior to his or her twenty-second birthday to be found mentally disabled under Listing 12.05. *See id.* Evidence of illiteracy, despite a claimant's education, supports a finding that the claimant's mental retardation occurred before age twenty-two. *Turner v. Bowen*, 856 F.2d 695, 699 (4th Cir. 1988); *see Maresh v. Barnhart*, 438 F.3d 897, 900 (8th Cir. 2006) (relying on school records and an IQ examination administered after the claimant's developmental period to establish that the claimant exhibited deficits in adaptive functioning prior to age twenty-two). "[I]n the absence of any evidence of a change in a claimant's intelligence functioning, it must be assumed that the claimant's IQ [] remained relatively constant." *Luckey v. U.S. Dep't of Health & Human Servs.*, 890 F.2d 666, 668 (4th Cir. 1989) (citing *Branham*, 775 F.2d at 1274).

Here, the record contains evidence of Plaintiff dropping out of school sometime in the eighth grade [R. 64–65, 154] and school grades consistently ranging in the D–F range in core subjects [R. 64]. In April 2008, Dr. J. Theodore Brown, Jr., specifically diagnosed Plaintiff with "mild mental retardation." [R. 133–36.] Testing by Dr. Brown indicated Plaintiff functioned at a first grade reading level and second grade math level, and Plaintiff had a verbal IQ score of 61, a performance IQ score of 69, and a full scale IQ of 62. [R. 134.] At the hearing, Plaintiff testified he had very little social interaction, stating he did not participate in any social activities or go to church, and he only visited his sister, his nephew, and a friend. [R. 184–85.] Therefore, the record contains evidence that Plaintiff has deficits in adaptive functioning in at least two skills areas, social/interpersonal skills and functional academic skills.

## **CONCLUSION**

Wherefore, based upon the foregoing, the Court recommends the Commissioner's decision be REVERSED and the case be REMANDED to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative action consistent with this recommendation.

IT IS SO RECOMMENDED.

s/Jacquelyn D. Austin
United States Magistrate Judge

January 6, 2012
Greenville, South Carolina

---

While the ALJ noted Plaintiff worked for many years performing simple labor, could make change, perform self-care, and drive, the ALJ failed to cite to record evidence indicating Plaintiff's IQ changed over time. The Court notes the Commissioner has recognized an individual's IQ tends to stabilize by age sixteen and consistency among sub-test scores increases confidence in the test's accuracy; the Commissioner has also approved the practice of inferring low IQ during the developmental period from testing done later. *Davis v. Astrue*, No. 2:07-1621, 2008 WL 1826493, at *4 (D.S.C. Apr. 23, 2008) (citing 65 Fed. Reg. 50,746, at 50,772 (Aug. 20, 2000)). Accordingly, as previously stated, the Court is not convinced substantial evidence supports the ALJ's conclusion that Plaintiff's impairments do not meet Listing 12.05 and recommends that, upon remand, the ALJ reconsider his analysis at Step 3.