IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

Bernie Randolph Huggins, )
 )   C.A. No. 8:10-2680-HMH-JDA
              Plaintiff, )
 )
       vs. )   **OPINION & ORDER**
 )
Michael J. Astrue, Commissioner of Social )
Security, )
 )
              Defendant. )

This matter is before the court with the Report and Recommendation of United States Magistrate Judge Jacquelyn D. Austin, made in accordance with 28 U.S.C. § 636(b)(1) and Local Civil Rule 73.02 for the District of South Carolina.[1] Bernie Randolph Huggins ("Huggins") seeks judicial review of the Commissioner of Social Security's ("Commissioner") denial of his applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act. Magistrate Judge Austin recommends reversing the Commissioner's decision and remanding the case for further administrative action. The Commissioner filed objections to the Report and Recommendation.

---

[1] The magistrate judge makes only a recommendation to this court. The recommendation has no presumptive weight. The responsibility to make a final determination remains with this court. See Mathews v. Weber, 423 U.S. 261, 270-71 (1976). The court is charged with making a de novo determination of those portions of the Report and Recommendation to which specific objection is made, and the court may accept, reject, or modify, in whole or in part, the recommendation of the magistrate judge or recommit the matter with instructions. See 28 U.S.C. § 636(b)(1).

1

For the reasons explained below, the court declines to adopt the magistrate judge's Report and Recommendation and affirms the decision of the Commissioner.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The facts are fully set forth in the decision of the administrative law judge ("ALJ"), (R. at 15-24), and summarized as follows. At the time of the hearing before the ALJ, Huggins was a sixty-one-year-old man with an eighth grade education and past relevant work as a millwright helper, farm laborer, and automobile mechanic helper. (Id. 19, 23, 33.) Huggins alleges that he has been disabled since December 20, 2007, due to "[l]eg giving out, cannot read or write, concentration, memory, chest wall pain[,] a heart testing, high blood pressure, cholesterol, diabetes, learning disability." (Id. at 41.)

Huggins filed applications for DIB and SSI on February 13, 2008. (Id. at 33-36.) The applications were denied initially and upon reconsideration. (Id. at 15.) On June 4, 2009, Huggins appeared and testified at a hearing before the ALJ. (R. at 15.) The ALJ found that Huggins had the following severe impairments: osteoarthritis of the thigh and left leg, organic mental disorder, and somatoform disorder. (Id. at 17.) The ALJ further determined that Huggins retained the residual functional capacity ("RFC") to perform unskilled medium work and therefore was capable of performing his past relevant work as a farm laborer. (Id. at 18, 23.) Accordingly, the ALJ concluded that Huggins was not disabled and denied his applications for DIB and SSI. (Id.) The Appeals Council denied Huggins' request for review of the ALJ's decision, thereby making the ALJ's determination the final decision of the Commissioner. (Id. at 5.)

Huggins filed the instant action on October 15, 2010, mounting numerous challenges to the ALJ's RFC determination and conclusion that Huggins was capable of performing his past relevant work as a farm laborer. First, he contends that the ALJ's assessment of his RFC failed to accurately reflect his mental and physical limitations because the ALJ failed to consider his need for frequent breaks and his illiteracy. (Pl. Br. 2-3.) Second, Huggins argues that the ALJ impermissibly discounted the finding of a state agency disability examiner who determined that Huggins lacked the functional capacity to perform his past relevant work. (Id. at 3.) Finally, Huggins maintains that the ALJ erred in finding that his statements about the intensity, persistence, and functionally limiting effects of his pain were not entirely credible. (Id. at 4.)

The magistrate judge addressed only Huggins' second argument. She concluded that the ALJ failed to sufficiently explain the weight given to a state agency disability examiner's finding that Huggins' functional capacity precluded him from performing his past relevant work. (Report & Recommendation 19.) Without a cogent explanation of the weight given to the disability examiner's finding, the magistrate judge reasoned that the court is unable to determine whether the ALJ's conclusion that Huggins could engage in past relevant work is supported by substantial evidence. (Id.) Accordingly, she recommends reversing the Commissioner's denial of benefits and remanding the case to the ALJ for further administrative action.

## II. Discussion of the Law

### A. Standard of Review

Under 42 U.S.C. § 405(g), the court may review only whether the Commissioner's decision is supported by substantial evidence and whether the correct law was applied. See Myers v. Califano, 611 F.2d 980, 982 (4th Cir. 1980). Accordingly, the court "must uphold the

factual findings of the [Commissioner] if they are supported by substantial evidence and were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996). "Substantial evidence" is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Id. (internal citations omitted). Hence, absent any error of law, if the Commissioner's findings are supported by substantial evidence, the court should uphold the Commissioner's findings even if the court disagrees. See Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

### B. Huggins' Claims

Huggins' arguments concern the ALJ's findings at step four of the established five-step sequential analysis for disability claims. At step four, the ALJ must first assess a claimant's RFC[2] and then determine whether the claimant is capable of performing past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). The ALJ concluded that despite Huggins' alleged disabilities, he retained the RFC to perform medium work, which involves "lifting and/or carrying no more than 50 pounds occasionally and 25 pounds frequently and standing and/or walking about 6 hours in an 8-hour workday." (R. at 23.) The ALJ further found that Huggins is limited to unskilled work due to his limited education and illiteracy. (Id. at 18, 23.) Relying upon the testimony of a vocational expert ("VE"), the ALJ determined that Huggins' previous work as a farm laborer constituted unskilled medium work. (Id. at 23.) Accordingly, the ALJ concluded that Huggins was capable of performing his past relevant work and was therefore not disabled. (Id.) For the

---

[2] "[R]esidual functional capacity is the most [a claimant] can still do despite [his] limitations." 20 C.F.R. § 404.1545(a)(1).

reasons that follow, the court concludes that substantial evidence supports the ALJ's determination.

### 1. Credibility

Huggins challenges the ALJ's finding that Huggins' subjective statements about the intensity, persistence, and functionally limiting effects of his pain were not entirely credible. The ALJ explicitly found that Huggins' "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however [his] statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with" his RFC. (Id. at 22.) The ALJ based his credibility determination largely upon Huggins' testimony concerning his daily activities. Huggins testified that despite his alleged impairments, he could dust; vacuum; repair cars, lawnmowers, and small appliances; mow the lawn; shop; drive; and visit friends and family. (R. at 180, 182-85.) The ALJ found that Huggins' ability to perform such "a wide variety of daily activities . . . demonstrates that he has the ability to sit, stand, and walk on a prolonged basis, use his upper and lower extremities to lift, carry, push and pull; and use his hands without limitations." (Id. at 21.) The ALJ further determined that these routine activities evidence that Huggins' "mental impairments do not significant[ly] affect his ability to perform routine activities of daily living independently." (Id.) In finding Huggins' statements regarding the intensity, persistence, and functionally limiting effects of his pain to be not entirely credible, the ALJ further noted that despite his allegations of being disabled, Huggins required no physical therapy, pain management, or narcotic medication, and that there was no medical evidence showing a need for regular ongoing care from his

5

primary physician, or frequent emergency room treatment, inpatient hospitalization, or surgery due to any alleged impairment. (Id. at 20.)

The ALJ reasonably concluded that Huggins' daily activities coupled with his infrequent need for medical attention and treatment to relieve pain during the relevant time period were inconsistent with his allegations of impairments so severe as to prevent him from performing any work activity. See Johnson v. Barnhart, 434 F.3d 650, 658 (4th Cir. 2005) (upholding ALJ's adverse credibility determination when claimant testified that "she attends church twice a week, reads books, watches television, cleans the house, washes clothes, visits relatives, feeds the family pets, cooks, manages her household finances, and performs the stretches recommended by her chiropractor"); Mickles v. Shalala, 29 F.3d 918, 930 (4th Cir. 1994) (explaining that inconsistency between claimant's allegations of severity of condition and actual medical treatment sought is "highly probative" of claimant's credibility). The ALJ articulated explicit and adequate reasons for his credibility determination, and because substantial evidence supports the ALJ's finding, the court discerns no error.

### 2. RFC Assessment

Huggins further argues that the ALJ's RFC determination is not supported by substantial evidence because the ALJ failed to consider Huggins' need for frequent breaks and inability to stand for prolonged periods of time. The only evidence in the record that Huggins identifies as supporting his need for frequent breaks is his own testimony before the ALJ in which he stated that he could stand for only "an hour or two" due to pain in his left leg and that he is unable to work for prolonged periods because his diabetes makes him weak. (R. at 186-87.) As explained above, however, the ALJ found Huggins' statements regarding the persistence and functionally

limiting effects of his pain not entirely credible to the extent they conflicted with his RFC, concluding that Huggins' ability to perform a wide variety of daily activities demonstrated "the ability to sit, stand, and walk on a prolonged basis." (Id. at 21.) Furthermore, Huggins' testimony about the length of time he could work was inconsistent. Elsewhere during the hearing he stated that despite his alleged impairments, he could work in two- to three-hour increments without a break and that he could stand for "a couple of hours" before having to sit down. (Id. at 183, 186-87.) These statements are consistent with the ALJ's finding that Huggins is capable of "standing and/or walking about 6 hours in an 8-hour workday" because a typical eight-hour workday is comprised of a "morning break, a lunch period, and an afternoon break at approximately 2-hour intervals." SSR 96-9p, 1996 WL 374185, at *6 (1996). Medical evidence in the administrative record further supports the ALJ's finding. Dr. Eduardo Donato ("Dr. Donato") examined Huggins and noted that he was "fully ambulatory and totally independent" in his activities of daily living. (R. at 122.) Dr. Harriett R. Steinert ("Dr. Steinert") administered Huggins a comprehensive medical examination and similarly observed that Huggins walks with a normal gait. She concluded that Huggins' impairments imposed no limitations on his work activity. (Id. at 138.) No examining physician found Huggins' impairments to impose standing or walking restrictions as severe as Huggins testified. Because the only evidence in the administrative record supporting Huggins' need for frequent breaks are his own statements, which the ALJ explicitly found to be not entirely credible, Huggins has failed to show that the ALJ's RFC determination is erroneous.

Huggins next argues that the ALJ failed to properly consider Huggins' illiteracy when assessing his RFC. This argument is plainly without merit. The ALJ found that "[d]ue to

illiteracy, [Huggins] is limited to unskilled routine work." (Id. at 18.) Substantial evidence supports the ALJ's finding. Huggins underwent a consultative psychological examination by Dr. J. Theodore Brown, Jr. ("Dr. Brown") on April 8, 2008. (Id. at 133-36.) Dr. Brown observed that Huggins "had some difficulty understanding and following through on some instructions," and diagnosed Huggins with mild mental retardation. (Id. at 21.) The ALJ directly incorporated Dr. Brown's determinations and found that Huggins' mental impairment and limited education affected his ability to work only by preventing him from performing complex tasks involving detailed instructions. (R. at 22.) The ALJ further noted that Huggins' daily activities "demonstrate that his mental impairments do not significant[ly] affect his ability to perform routine activities of daily living independently" and that the "overall evidence indicates that he has the ability to understand, remember, and carry out short, simple instructions although he may have difficulty with detailed instructions." (Id. at 21-22.) Accordingly, the ALJ concluded that Huggins is limited to unskilled work.[3] Indeed, Huggins' past relevant work as a farm laborer supports the ALJ's determination that his mental impairment does not preclude him from engaging in any employment. Based on the foregoing, the court finds that substantial evidence supports the ALJ's assessment of Huggins' RFC.

---

[3] Regulations promulgated by the Social Security Administration ("SSA") explain that "[u]nskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time." 20 C.F.R. § 404.1568(a). An SSA policy statement further clarifies that "[u]nskilled occupations are the least complex types of work," encompassing jobs that take thirty days or less to learn to perform. SSR 82-41, 1982 WL 31389, at *2 (1982).

### 3. Disability Examiner's Finding

Huggins finally contends that the ALJ's determination that he can perform past relevant work as a farm laborer is not supported by substantial evidence because the ALJ erroneously discounted a state agency disability examiner's finding that he lacked the functional capacity to perform his past relevant work. The ALJ concluded that Huggins was capable of performing his past work as a farm laborer based upon his assessment of Huggins' RFC and the testimony of a VE who testified that the position of a farm laborer involved unskilled medium work. (R. at 23.) Huggins argues that the ALJ committed reversible error by not according greater weight to the disability examiner's finding and for "not giv[ing] the vocational expert a hypothetical question concerning Plaintiff's inability to do his past relevant work as a farm laborer." (Pl. Br. 3.)

Huggins' contention that the ALJ should have accorded greater weight to the disability examiner's finding regarding his ability to perform his past relevant work is unpersuasive. First, a disability examiner is not considered an "acceptable medical source[]" under the regulations. 20 C.F.R. § 404.1513(a), (d). Instead, the regulations classify "[p]ublic and private social welfare agency personnel" as "other sources," 20 C.F.R. § 404.1513(d)(3), and numerous courts have concluded that a disability examiner's findings are entitled to little, if any, presumptive weight. See, e.g., Casey v. Astrue, C.A. No. 07-878-C, 2008 WL 2509030, at *4 n.3 (S.D. Ala. June 19, 2008) (unpublished) (explaining that a finding by a disability specialist "is entitled to no weight"); see also Lloyd v. Astrue, Civil Action No. 10-920, 2011 WL 7049451, at *7 n.4 (W.D. La. Dec. 7, 2011) (unpublished) ("A disability examiner is not a medical doctor, and her opinion is not considered an acceptable medical source statement or afforded the same weight as

an opinion of a medical or psychological consultant of the state agency."); Forsythe v. Astrue, Civil Action No. 07-266, 2008 WL 4279573, at *8 n.23 (W.D. Pa. Sept. 18, 2008) (unpublished) ("The ALJ did refer to the reports of two state agency disability examiners . . . but properly gave them relatively little weight because they were file reviews as compared to physical examinations and were conducted before much of the medical evidence was compiled."). Second, the disability examiner provided no support for her finding that Huggins was unable to engage in his past relevant work. (R. at 81.) Instead, her conclusion consists of a mere checkmark on a standard vocational report form. Such a conclusory finding devoid of any explanation necessarily warranted little weight. Celaya v. Halter, 332 F.3d 1177, 1183-84 (9th Cir. 2003) (explaining that a medical consultant's assessment of a claimant's RFC in a vocational report could not constitute substantial evidence because the consultant's findings were "without comment, rationale, or evident attention to the medical record"). Finally, the disability examiner's finding is unsupported by medical evidence in the record.[4] See Laws v. Celebrezze, 368 F.2d 640, 644 (4th Cir. 1966) (finding that the Commissioner did not err in disregarding lay testimony when it conflicted with objective medical evidence). Dr. Steinert, for example, administered Huggins a comprehensive medical examination and concluded that Huggins had "no limitations" on work activities. (R. at 138.) Dr. Donato's report similarly states that Huggins is "fully ambulatory and totally independent" in his activities of daily living. (Id. at 122.) Based on the foregoing, the ALJ did not err in discounting the disability examiner's finding.

---

[4] According to the vocational report, the disability examiner's finding was merely based upon information gathered during a telephone conversation with Huggins as well as Huggins' work history report. (R. at 81.)

The magistrate judge determined that the ALJ erred by failing to articulate any reasons for rejecting the disability examiner's findings. (Report & Recommendation 19.) However, because it is abundantly clear that substantial evidence supports the ALJ's decision, the court concludes that remand is unwarranted.

Although an ALJ is required to evaluate all evidence in the record that may have a bearing on the determination of disability, 20 C.F.R. § 404.1520(a)(3), "there is a distinction between what an adjudicator must consider and what the adjudicator must explain in the disability determination or decision." SSR 06-03p, 2006 WL 2329939, at *6 (2006); see also Dyer v. Barnhart, 395 F.3d 1206, 1211 (11th Cir. 2005) ("[T]here is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision."). The ALJ need only provide a reviewing court "with sufficient reasoning for determining that the proper legal analysis has been conducted." Aytch v. Astrue, 686 F. Supp. 2d 590, 602 (E.D.N.C. 2010). Therefore, the ALJ's opinion must reflect that he has considered and discussed the evidence supporting his decision, "the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." Clifton v. Chater, 79 F.3d 1007, 1010 (10th Cir. 1996).

The record indisputably demonstrates that the ALJ considered the disability examiner's vocational report. Craig v. Apfel, 212 F.3d 433, 436 (8th Cir. 2000) ("[A]n ALJ's failure to cite specific evidence does not indicate that it was not considered."). During the hearing, the ALJ stated that "for whatever reason the agency said . . . Mr. Huggins couldn't do his past work, could do other work but couldn't do his past. I'm not sure why they concluded that." (R. at 197.) Notwithstanding his consideration of the disability examiner's vocational report, the ALJ

nevertheless relied upon his assessment of Huggins' RFC coupled with the VE's testimony concerning the nature of Huggins' past work in determining whether Huggins could perform his past relevant work. See 20 C.F.R. § 404.1560(b)(2) ("We may use the service of vocational experts . . . to obtain evidence we need to help us determine whether you can do your past relevant work, given your residual functional capacity."); see also Chandler v. Comm'r of Soc. Sec., No. 11-2220, 2011 WL 6062067, at *3 (3d Cir. Dec. 7, 2011) (unpublished) ("The ALJ–not treating or examining physicians or State agency consultants–must make the ultimate disability and RFC determinations."). The VE testified as to the skill and exertional levels of Huggins' previous work, stating that positions of a millwright helper and automobile mechanic helper constituted semi-skilled heavy work and that the position of a farm laborer constituted unskilled medium work.[5] (R. at 196-97.) After comparing Huggins' RFC to the physical and mental demands of Huggins' past work, the ALJ concluded that Huggins is capable of returning to his past relevant work as a farm laborer as generally performed. (Id. at 23.) Because the ALJ made explicit findings regarding the physical and mental demands of Huggins' past relevant work and properly relied upon the testimony of a VE in making his determination, the court concludes that substantial evidence supports his finding that Huggins is capable of performing his past relevant work as a farm laborer. Given that the disability examiner's finding was entitled little, if any, presumptive weight, was unsupported by medical evidence in the record,

---

[5] Huggins argues that given the disability examiner's finding, the ALJ should have posed a hypothetical question to the VE concerning Huggins' inability to do past relevant work as a farm laborer. (Pl. Br. 3.) The ALJ's question to the VE was based upon Huggins' RFC. (R. at 196-97.) Because the ALJ's RFC determination is supported by substantial evidence and because the ALJ's question to the VE merely incorporated that determination, the court finds no error.

and was devoid of any explanation, it is clear that the ALJ's determination is supported by substantial evidence. See Laws, 368 F.2d at 644 (affirming Commissioner's denial of benefits despite the Commissioner's failure to discuss lay testimony when medical evidence as well as objective and expert opinion supported finding of disability).[6]

It is therefore

**ORDERED** that the decision of the Commissioner is affirmed.

**IT IS SO ORDERED.**

                                          s/Henry M. Herlong, Jr.
                                          Senior United States District Judge

Greenville, South Carolina
February 15, 2012

---

[6] In his reply memorandum to the Commissioner's objections, Huggins argues for the first time that the ALJ erred by "failing to consider [an examining physician's] finding of obesity." (Pl. Reply Comm'r Objections 2.) The court rejects this argument. The ALJ explicitly found that "there is no evidence that [Huggins] has any significant problem using his extremities or with mobility due to obesity that would preclude the performance of basic work activity. . . . Based on the clinical and laboratory findings, there is no evidence that obesity markedly limits his ability to function or to perform routine activities within a work environment." (R. at 20-21.) Huggins' own testimony supports the ALJ's finding. When asked by the ALJ whether he felt he was "limited in any way because of how much [he] weighed," Huggins responded "no, sir." (Id. at 198.)